UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LARRY P. CONTERO, | ) | 1:05cv1012 AWI DLB HC |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Petitioner, | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| v. | ) | |
| | ) | (Document 1) |
| JEANNE S. WOODFORD, Warden, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

PROCEDURAL HISTORY[1]

On July 7, 1995, in the Fresno County Superior Court, Petitioner was convicted of voluntary manslaughter in violation of California Penal Code section 192(a)[2], with an enhancement for use of a firearm. On August 14, 1995, he was sentenced to 16 years imprisonment.

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

[2] All further statutory references are to the California Penal Code, unless otherwise noted.

1

In September 2004, Petitioner filed an administrative appeal in which he submitted a self-prepared "waiver" pursuant to section 2934 and requested day-for-day credits based on his participation in the Inmate Work Training Incentive Program ("IWTIP"). He argued that the denial of these credits violated his equal protection rights. His appeal was denied because he was convicted of a violent offense listed under section 667.5(c) and is therefore not eligible to accrue more than fifteen percent credit pursuant to section 2933.1. Petitioner was also informed that the "waiver" pursuant to Section 2934 only applies to prisoners subject to section 2931. Section 2931 does not apply to crimes committed on or after January 1, 1983.

In his formal appeal, Petitioner explained that the issue was not whether he was *initially* entitled to half-time credits. According to Petitioner, other inmates sentenced under section 2933.1 but are receiving half-time credits by signing the section 2934 waiver. He also argued that he has been forced to work under the IWTIP's restrictive program. His appeal was returned because the action he was appealing was not taken by the California Department of Corrections ("CDC"), therefore depriving the CDC of jurisdiction.

Petitioner filed a petition for writ of habeas corpus in the Fresno County Superior Court on December 6, 2004. The court denied the petition on December 27, 2004.

Petitioner filed a petition for writ of habeas corpus on December 7, 2004, in the California Supreme Court. On January 12, 2005, the court denied the petition.

On April 7, 2005, Petitioner filed a petition for writ of habeas corpus in the Fifth District Court of Appeal. The court denied the petition on May 9, 2005, without reaching the merits because Petitioner failed to include a copy of the superior court decision at issue.

Petitioner filed the instant federal petition on August 8, 2005. He argues that the denial of worktime credits violates his right to equal protection.

Respondent filed its answer on December 27, 2005.

Petitioner filed his traverse on January 19, 2006.

DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. Petitioner challenges his classification at Pleasant Valley State Prison in Coalinga, California, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court

proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      Equal Protection Violation

Petitioner concedes that he was convicted of an offense that did not require the CDC to automatically give him "worktime" or "halftime" credits pursuant to section 2933, which allows inmates to earn day-for-day credits for full-time performance in a qualifying work, training or education program. Nonetheless, he argues that because he has participated in the IWTIP and subjected himself to "all the adverse consequences of such program," he is entitled to the worktime credits that he has already earned. He contends that "hundreds, if not thousands," of other inmates similarly situated have not only been given halftime credits under section 2933, but have received credits retroactively back to their arrival at CDC through a waiver pursuant to section 2934. According to Petitioner, this violates equal protection because almost all inmates are forced to work, yet CDC arbitrarily and automatically gives some violent and serious felons

the waiver and halftime credits, while refusing it to others "that are working right beside them and suffering the greater credit losses, less yard, less visits, etc." Petition, at 5-6.

The Supreme Court has held that the equal protection clause means "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th Cir. 1997). The first step in any equal protection analysis is to identify petitioner's classification or group. Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995). Petitioner must show that the law has been applied in a discriminatory manner on him or imposes different burdens on different groups. Id.; Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988). The second step requires the Court to determine the level of scrutiny with which the Court should review the statute. Freeman, 68 F.3d at 1187. Discrimination on the basis of race or national origin and discrimination that affects fundamental rights are subject to strict scrutiny. Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914 (1988).

By contrast, classifications that do not involve a suspect class or fundamental right are subject to the rational relationship test and accorded a strong presumption of validity. Heller v. Doe by Doe, 509 U.S. 312, 319 (1993). Rational basis review "is not a licence for courts to judge the wisdom, fairness, or logic of legislative choices." Id. (citations omitted). The classification must be upheld if there is any "reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (citations omitted). The burden is on the "one attacking the legislative arrangement to negate every conceivable basis which might support it." Id. (citations omitted). As Petitioner's classification involves neither a suspect class nor a fundamental right, it is subject to the rational basis test.

Here, the California Legislature has mandated that the CDC require every able-bodied prisoner to work "as many hours of faithful labor in each day and every day during his or her term of imprisonment" as provided in the CDC's rules and regulations. Cal. Penal Code § 2700. Worktime credits for prisoners whose crimes were committed on or after January 1, 1983, are

governed by section 2933.  Pursuant to this section, worktime credits are a privilege, not a right, and must be earned and may be forfeited.  Cal. Penal Code § 2933(b).

Section 2933(a) allows inmates to earn day-for-day credits for full-time performance in a qualifying work, training or education program.  However, under section 2933.1, "[n]otwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."  Here, Petitioner was convicted of voluntary manslaughter, which is listed in section 667.5.  Cal. Penal Code § 667.5(c)(8).  Therefore, Petitioner may not reduce his sentence by more than fifteen percent and is not eligible to earn half-time credits.  Cal. Penal Code § 2933.1.

Nor is Petitioner eligible for a waiver under section 2934.  Under that section, an inmate who committed a felony before 1983 can waive his or her right to automatically receive good behavior credits under section 2931, which are capped at one-third, and instead earn half-time credits under section 2931 by participating in approved programs.  In re Strick, 148 Cal.App.3d 906, 910 (1983).  Here, Petitioner committed his crime in 1995 and is therefore not eligible for this waiver.

Petitioner is unable to establish a violation of equal protection based on the above statutory scheme.  Although Plaintiff argues that he is forced to work and should earn credits accordingly, the statutory scheme serves numerous interests and advances legitimate goals. Inmates are required to work so that they will develop job skills and a work ethic, thereby improving their chances for reintegration into society.  People v. Goodloe, 37 Cal.App.4th 485, 488 (1995).  Additionally, as Respondent points out, idle inmates can lead to trouble in the prison setting.

Moreover, section 2933.1 is intended to limit conduct credits for violent felons.  As the California courts have explained, "[s]ection 2933.1 . . . is an expression of the Legislature's desire to delay the parole of violent felons . . .and is intended to identify 'violent felonies' and to single them out for special consideration 'when imposing a sentence to display society's condemnation for these extraordinary crimes against the person."  People v. Ramos, 50

Cal.App.4th 810, 816 (1996). This credit limitation is therefore intended to protect the public from dangerous offenders who might otherwise be released on parole on an earlier date. People v. Van Buren, 93 Cal.App.4th 875, 880 (2001) (citations omitted). "By limiting custody credits for defendants convicted of violent felonies, section 2933.1 complements the purpose of the Three Strikes law to ensure longer prison sentences for those who commit serious of violent felonies." Id. (citations omitted).

The statutory scheme at issue therefore serves to advance the legitimate goals of public safety and therefore does not violate the Equal Protection clause. See eg., McQueary v. Blodgett, 924 F.2d 829, 834-835 (9th Cir. 1991) (finding no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system).

To the extent that Petitioner claims that other inmates similarly situated are receiving half-time credits, thereby violating his equal protection rights, his argument fails. As support for his argument, Petitioner attaches Legal Status Summary Sheets for four inmates and argues that these inmates also committed violent felonies but have been earning half-time credits under section 2933 pursuant to a section 2934 waiver. However, these inmates are not similarly situated because their original offense are not violent offenses under section 2933.1. Declaration of Pam Webster ("Webster Dec."), attached to Answer, at ¶¶ 10, 13.

Finally, Petitioner's reliance on In re Monigold, 253 Cal.App.3d 1224 (1988) is misplaced. Petitioner contends that this case put CDC on notice that if they forced a person to participate in the IWTIP and subjected the person to the program's restrictions, CDC was required to give the person halftime credits regardless of whether they were entitled to receive worktime credits under section 2933. In Monigold, the petitioner was serving an indeterminate term of 15 years to life for second degree murder. In error, the CDC allowed him to earn day-for-day worktime credits pursuant to section 2933 and he signed a waiver. His minimum eligible parole date ("MEPD") was recalculated and reflected a cut of 26 months. In re Monigold, 253 Cal.App.3d at 1226. In April 1987, after earning one-for-one worktime credits for four years, petitioner was informed that the CDC erred in allowing his participation in the worktime credit

1  program given the Attorney General's March 1987, conclusion that state prisoners serving
2  indeterminate sentences of 15 years to life were ineligible for worktime credits under section
3  2933. His earned worktime credits were revoked and his MEPD recalculated. Id., 205
4  Cal.App.3d at 1226-1227. The court determined that the state was estopped from recalculating
5  and postponing his MEPD because the state informed the petitioner that he was eligible for the
6  worktime credit program and he worked under that program in good faith for four years. Id. at
7  1230-1231.
8       In contrast, the CDC never informed Petitioner that he was eligible for worktime credits
9  under section 2993. Indeed, when Petitioner presented his "waiver" to the CDC, he was
10 informed that he was not eligible pursuant to section 2993.1 based on his conviction for
11 voluntary manslaughter. Any belief by Petitioner that he was entitled to earn day-for-day
12 worktime credits was a result of his misunderstanding of the statutory scheme, rather than
13 reliance on CDC's acceptance into the program.
14      Accordingly, the Court finds that Petitioner's classification does not result in a violation
15 of equal protection.

## RECOMMENDATION

17      The Court HEREBY RECOMMENDS that the petition for writ of habeas corpus be
18 DENIED.
19      This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii,
20 United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B)
21 and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern
22 District of California. Within thirty (30) days after being served with a copy, any party may file
23 written objections with the court and serve a copy on all parties. Such a document should be
24 captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the
25 objections shall be served and filed within ten (10) court days (plus three days if served by mail)
26 after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant
27 to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the
28

specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    **Dated:   February 26, 2006**          **/s/ Dennis L. Beck**
3b142a                                       UNITED STATES MAGISTRATE JUDGE